587 A.2d 1125

**Judith K. COUTANT**

v.

**Norman COUTANT.**

**No. 770, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

April 1, 1991.

Robert W. Thompson Annapolis, for appellant.

Argued before BLOOM and ROSALYN B. BELL, JJ., and JAMES S. GETTY (retired), Specially Assigned, Judge.

BLOOM, Judge.

In August 1985, the Circuit Court for Anne Arundel County granted appellant, Judith Coutant, a divorce *a vinculo matrimonii* from appellee, Norman Coutant, and awarded appellant custody of the parties' minor child, use and possession of the family home, child support, alimony, and counsel fees.

In February 1988, custody of the minor child was transferred from Mrs. Coutant to Mr. Coutant, who thereafter filed a Motion for Modification of the Divorce Decree. The court held that since appellant no longer had custody of the child she was no longer entitled to the use and possession of the former family home. The court appointed a trustee to sell the property in lieu of partition and directed that the proceeds of sale be placed in escrow pending a further hearing to determine the distribution of such proceeds of sale as well as any remaining issues.

After conducting a hearing to determine the distribution of the house sale proceeds, the court filed a "Memorandum of Opinion and Decree," on 25 November 1988.[1] On 30 December 1988 Mrs. Coutant noted an appeal to this Court from the November 25th decree. We dismissed that appeal because the notice of appeal had been filed more than 30 days after the date of the judgment from which it was taken.

The Court of Appeals granted *certiorari* to determine whether the judgment became final and appealable only

---

1. In its memorandum the court addressed each of the contentions advanced by the parties. The trustee's fee was not addressed, presumably because the trustee's petition for approval of a fee had not yet been filed. An order approving the trustee's fee was thereafter entered on 9 December 1988.

upon the later entry of the order fixing the trustee's fee. It was then discovered that the Clerk of Court for Anne Arundel County had failed to enter the order of 25 November 1988 on the docket, whereupon the Court of Appeals dismissed the appeal as premature, since there was no judgment of record.

Judgment was docketed by the Clerk of Court on 6 April 1990, after which appellant took this timely appeal, in which she presents a pentad of issues:

1. Did the trial judge commit reversible error in refusing to hear evidence concerning a monetary award?

2. Did the trial judge commit reversible error by allowing non-enforceable loans to be considered marital debts?

3. Did the trial judge commit reversible error by requiring appellant to pay contribution to appellee for mortgage payments made under court order?

4. Was the trial judge's finding of waste by the appellant supported by the evidence?

5. Should the appellant have been granted post-judgment interest on the unpaid attorney's fees which were reduced to a judgment?

*Facts*

The parties were married in Connecticut on 4 September 1971, and later moved to Maryland. Their son was born on 19 October 1979. The parties separated in April 1984, with Mr. Coutant leaving the family home in Pasadena, Maryland. Slightly over a year later, Mrs. Coutant filed a complaint for an absolute divorce which was granted on 13 August 1985. The judgment of divorce granted her custody of the parties' minor child, and she was awarded child support and the use and possession of the family home and family use personal property for a period of three years. Mrs. Coutant was also awarded rehabilitative alimony in the amount of $350 per month for three years and permanent alimony in the amount of $100 per month thereafter.

Mrs. Coutant was ordered to pay "all maintenance expenses on the family home," but Mr. Coutant was ordered to pay the mortgage, insurance, and taxes during the use and possession period. The judgment of divorce further provided that a final adjustment of the "equities and rights of the parties concerning the family home" would be made upon termination of the use and possession order. Finally, the court ordered Mr. Coutant to pay $2,000 toward Mrs. Coutant's attorney's fees. A monetary judgment for the $2,000 award of counsel fees was entered.

The court declined to grant a monetary award at the time of divorce, since the only marital property, with the exception of an automobile having no value that Mr. Coutant left with Mrs. Coutant, was the property subject to the use and possession order. According to the statute then in effect, § 8–203(c) of the Family Law Article of the Annotated Code of Maryland (1984), such property could not then have been considered by the court as marital property for the purpose of making an award.

As a result of the change of custody in February 1988, the court terminated the use and possession order and appointed a trustee to sell the property in lieu of partition, with the proceeds of sale to be placed in escrow pending a further hearing to determine how they should be distributed.

The house was sold in the summer of 1988 for $120,000, netting the sellers a total of $64,831.94. Following the sale, the court conducted a hearing to determine how the proceeds of the sale should be distributed. According to the court, there were four sub-issues to be decided, all of which would have an impact on the distribution of the proceeds: (1) marital property/monetary award, (2) joint loans, (3) right of contribution, and (4) waste.

The court declined to take additional evidence pertaining to a monetary award, insisting that it had "ruled on this issue at the hearing and held it had been determined in its Memorandum of Opinion and Decree of August 13, 1985,

that no award would be made." The court also ruled that $11,000 be deducted from the proceeds of sale prior to distribution and paid to Mr. Coutant as the obligor on two notes to his mother for funds he had borrowed to acquire the parties' first house in Connecticut.

With respect to contribution, the court held that Mr. Coutant was entitled to be reimbursed by Mrs. Coutant for one-half the mortgage payments made by him from the date of the divorce judgment until the date the house was sold.

Concerning the issue of waste, Mr. Coutant claimed that he was entitled to reimbursement for the deterioration of the property during the use and possession by Mrs. Coutant since she had been ordered to maintain the property. The court took note that the appraiser had reduced the value of the property by $17,500 due solely to its poor condition and projected repairs, replacements, and remodeling. The only item addressed in the trustee's report, however, that the court found attributable solely to appellant was a collapsed septic system. The court held Mrs. Coutant liable for $2,200, the estimated cost of repair to that system, by virtue of the requirement that she be responsible for maintenance of the house.

Both parties addressed one final issue at the hearing, attorney's fees. Mrs. Coutant requested the court to direct the trustee to subtract from sums awarded to Mr. Coutant the amount awarded to her for attorney's fees at the time of divorce, together with judgment interest thereon. The court directed that $2,000, without interest, be subtracted from appellee's share of the proceeds. Furthermore, the court ordered Mrs. Coutant to "repay into the proceeds" the sum of $1,866, which had been paid out of the proceeds of sale at settlement to satisfy a lien against her.

As we address each of appellant's assertions, further facts will be set forth as necessary to the discussion.

## I

Appellant first asserts that the trial court's failure to hear additional evidence concerning a monetary award

was reversible error. According to § 8–203(c) of the Family Law Article,[2] which was in effect at the time of the divorce, "the family home and family use personal property may not be considered marital property so long as the family home or family personal property is the subject of a use and possession order." Furthermore, § 8–210(c) expressly authorizes the court to make a further adjudication of a marital award at the termination of the use and possession order. That subsection states:

> When a provision that concerns the family home or family use personal property terminates, the court shall treat the property as marital property if the property qualifies as marital property, and adjust the equities and rights of the parties concerning the property as set out in § 8–205 of this subtitle.

*See also Barr v. Barr,* 58 Md.App. 569, 586–87, 473 A.2d 1300 (1984).

Section 8–205(a) of the Maryland Family Law Article provides, in pertinent part:

> After the court determines which property is marital property, and the value of the marital property, the court *may* grant a monetary award as an adjustment of the equities and rights of the parties concerning marital property, whether or not alimony is awarded. The court shall determine the amount and the method of payment of a monetary award after considering each of the following factors:.... (Emphasis added.)[3]

---

**2.** Subsection (c) of § 8–203 was repealed by Chapter 174 of the Laws of 1986, effective 1 July 1986.

**3.** § 8–205(a) sets forth the following 10 factors:
 (1) the contributions, monetary and nonmonetary, of each party to the well-being of the family;
 (2) the value of all property interests of each party;
 (3) the economic circumstances of each party at the time the award is to be made;
 (4) the circumstances that contributed to the estrangement of the parties;
 (5) the duration of the marriage;
 (6) the age of each party;

In the 13 August 1985 memorandum of opinion and decree, the court noted that, other than the family home, there was no evidence submitted concerning the existence of any other marital property.[1] Upon the termination of the use and possession order, the trial court declined to address the issue of a monetary award because, according to its memorandum of opinion and decree of 13 November 1988, it had considered that issue during the 13 August 1985 hearing wherein it determined that no award would be made.

It is obvious, however, that since there was no marital property as of 13 August 1985 upon which any monetary award could have been based, the family home then being subject to a use and possession order, the court could not have considered and decided the issue in 1985.

The court erred, therefore, in refusing to consider any of the proceeds of the sale of the former marital home as marital property on the basis of which a monetary award could be granted. This is not to say that a monetary award should be granted, although our disposition of the "Crawford contribution" issue, Part III hereof, *infra*, may be a factor to consider in determining whether an award is appropriate. As we noted in *Ward v. Ward*, 52 Md.App. 336, 339, 449 A.2d 443 (1982), "It is important to recognize that the monetary award is purely discretionary." Nor is

---

(7) the physical and mental condition of each party;
(8) how and when specific marital property was acquired, including the effort expended by each party in accumulating the marital property;
(9) any award of alimony and any award or other provision that the court has made with respect to family use personal property or the family home, and
(10) any other factor that the court considers necessary or appropriate to consider in order to arrive at a fair and equitable monetary award.
The trial court's opinion was filed on 13 August 1985. The 1986 amendment did not become effective until 1 July 1986.

**4.** There was some evidence that the parties owned a car with over 100,000 miles on it, which qualified as marital property, that Mr. Coutant had left with Mrs. Coutant. The court awarded the car to appellant.

the court now required to hear evidence on the ten factors of § 8–205(a), as appellant asserts. Those factors need be considered only if the court decides to grant a monetary award. In *Ward*, 52 Md.App. at 340, 449 A.2d 443, the chancellor determined that the only marital property was the couple's home, that the net value was $32,000, and that a monetary award was necessary in view of the parties' interest in the marital home and other circumstances. It was only then that he was bound to consider factors found in the statute. *Id.*

We shall, therefore, remand this issue to the trial court and, as we mandated in *Ward*, 52 Md.App. at 344, 449 A.2d 443: "upon remand, the chancellor should reconsider the evidence or take new testimony to determine, first, if an award need be made at all, and if so, to set a single amount that would fairly adjust the parties' equities in the marital property after considering the nine factors." [5]

## II

■ Appellant next asserts that the trial court committed reversible error when it ordered that $11,000 be deducted from the proceeds of the sale of the home and paid to Mr. Coutant in order to retire 18–year–old loans made to him by his mother.

It is apparent from the record that the chancellor and counsel for both parties shared the same misconception as to the meaning of the term "marital debt." Appellee contended and the court ruled that the debts to appellee's mother were payable out of the proceeds of sale because they were marital debts. Appellant argued vociferously that the debts, even if they were marital debts, were barred by limitations and, therefore, were not enforceable against her even though appellee had acknowledged the indebtedness. Obviously, the chancellor and both counsel mistakenly believed that a marital debt is a joint debt to be paid out

---

5. The number of factors was increased to ten after *Ward* was decided.

of the proceeds of marital property. Whether a debt is classified as a "marital debt," however, has nothing whatsoever to do with who owes it or how it is to be paid. As we pointed out in *Kline v. Kline*, 85 Md.App. 28, 44–45, 581 A.2d 1300 (1990):

> "Marital debt," like "marital property" and "nonmarital property," is a term that seems to invite confusion. "Debt," like "property," is a word quite familiar to almost everyone who can read, speak, or understand English. The most familiar connotations of "marital debt," however, are (1) a debt incurred by husband and wife jointly or (2) a debt incurred by either spouse for any marital purpose. Within the purview of the Act, however, the phrase has an artificial meaning at variance with these familiar connotations. A marital debt is a debt incurred to acquire marital property, (citations omitted). As with "marital property" or "nonmarital property," this concept arises only as an incident of marriage and is significant only if and when there is a judicial dissolution of the marital relationship. The sole purpose of applying the concept of "marital debt" is to diminish the value of marital property, on the theory that to the extent it is encumbered by debt marital property has not been acquired within the contemplation of the Act. (Citations omitted.) Who owes the debt is as immaterial as who owns the property. And the debt need not be a lien or encumbrance on the property; it is sufficient that there is a debt outstanding and that it was incurred to acquire the property. Finally, marital debt cannot be transferred from one item of marital property to another.

The issue before us is whether the court erred in forcing Mrs. Coutant to pay half of Mr. Coutant's debt to his mother by deducting the full amount of the debt, $11,000, from the proceeds of sale of the parties' jointly owned property, before dividing the balance of the proceeds between the parties. The argument before the court centered on the viability of the debt as a marital debt, but that was because the court and counsel were laboring under the

delusion that a valid marital debt, whether it was owed by one party or both and whether it constituted a loan or charge against the property or was totally unsecured, had to be paid out of marital property. A determination as to whether the debt, incurred to buy a house in Connecticut, the proceeds of sale of which were used to buy the home in Maryland, was a marital debt is relevant only with respect to the value of the marital property. If the debt is a marital debt, the marital property has a value of just $52,831.94 (the amount of the net proceeds of sale less $11,000); otherwise, the value of the marital property is the full amount of the net proceeds, $63,831.94. Since the assertion of error in charging Mrs. Coutant's share of the proceeds of sale with half the debt does not involve the question as to whether the debt is marital, we do not address that question.

There was no evidence whatsoever that would support a finding that Mrs. Coutant was ever indebted to her mother-in-law. Mr. Coutant borrowed the money; he alone executed the two promissory notes to his mother; he alone is obligated to pay the debt. The chancellor erred, therefore, in ordering the payment to Mr. Coutant of the full $11,000 from the proceeds from the sale of the house.

### III

Appellant next complains that the court erred in granting Mr. Coutant's request for contribution towards mortgage payments made by him during the use and possession order beginning on the date of the Decree of Divorce and culminating with the date the house was sold.[6]

In *Wassif v. Wassif,* 77 Md.App. 750, 766, 551 A.2d 935 (1989), Judge Moylan, writing for this Court, said that:

Just as the decision of whether to sign a use and possession order was in the sound discretion of the trial court,

---

6. According to the record, the gross amount of payments for this time period was $27,072, half of which is $13,536.

so also is the decision of whether to give the spouse credit for any mortgage payments he or she makes during its pendency. Any payments that were made by the Husband prior to the date of divorce, however, were made from marital property. Therefore, the Husband may receive credit only for any payments he has made from the date of divorce.

Citing *Prahinski v. Prahinski*, 75 Md.App. 113, 141, 540 A.2d 833 (1988), *aff'd*, 321 Md. 227, 582 A.2d 784 (1990). *See also, Crawford v. Crawford*, 293 Md. 307, 443 A.2d 599 (1982).

Judge Moylan also stated that "[t]he chancellor, of course, must bear in mind that in giving such credits, the children may be the losers. If credits are given the nonresident spouse, the custodial resident spouse, may not be in a position to afford to accept the benefits of a use and possession order, thereby rendering the children the losers." *Wassif, supra*, 77 Md.App. at 766 n. 2, 551 A.2d 935.

 We believe, therefore, that the better practice would be for the chancellor, at the time of granting a use and possession order, to specify whether the spouse who pays the mortgage principal, interest, taxes, and/or insurance on the marital home during the use and occupancy period will be entitled to contribution at the end of that period. Nevertheless, since the chancellor did not do so in this case (neither party having requested such specification), it remained in the chancellor's discretion after termination of the use and possession order whether contribution should be awarded. Appellant's contention is that the chancellor could not award contribution in this case, not that he abused his discretion in doing so. Abuse of discretion, not having been raised as an issue at any stage of the proceedings, is not before us.

Our affirmance of the contribution award as a permissible exercise of judicial discretion does not mean that we are convinced that an equitable result has been reached in this case. In reviewing the record we note that at the time of

the divorce the chancellor found that Mr. Coutant was earning $65,000 per year whereas Mrs. Coutant had an earning capacity of $55 per week ($2,860 per year). Mr. Coutant was ordered to pay alimony of $350 per month ($4,200 per year) for a three year period coextensive with the use and possession order, plus child support of $400 per month ($4,800 per year), in addition to the mortgage payments ($752 per month, $9,024 per year). That left Mr. Coutant with an income, before taxes, of about $43,000 per year for his own support, while Mrs. Coutant was left to support herself and the parties' child on a total of $11,860 per year plus Mr. Coutant's contribution of $9,024 for mortgage payments to provide a house for their shelter. The provision made by the court at the time of the divorce for Mrs. Coutant and the child was rather niggardly; requiring her to refund out of her share of jointly owned assets an amount equal to $376 per month of the meager amount she and the child had to live on may now strike the court as somewhat less than equitable. If it does, the court now has available to it the mechanism of a monetary award to adjust the equities between the parties.

## IV

Appellant next contends that there was insufficient evidence to support the trial court's finding of waste on her part. In the 13 August 1985 Memorandum of Opinion and Decree, the court ordered that appellant would be responsible for the maintenance of the marital home. In contemplation of a sale, the subject property was appraised on 12 May 1988. The appraiser's report noted that it was in a general state of disrepair and estimated that the value should be reduced by $17,500 due solely to the poor condition and projected repairs, replacements, and remodeling.

The court's opinion notes that the house suffered from numerous deteriorations, including a rotted back porch, damage to the garage doors and roof gutters, termite damage, and a collapsed septic system. The court found that, pursuant to its order to maintain the property, appel-

lant was responsible for the repairs to the septic system, and assessed appellant's proceeds from the sale of the house $2,200, which was the estimated cost of repair as testified to by Mrs. Coutant.

Appellant now contends that "maintenance expenses" should not include the expenditure of over $2,000 on a repair of this magnitude "just because she happened to be in sole possession of the house at the time the system became defective...." Appellant fails to cite any authority for her proposition, but, in any event, we see it differently.

According to the court's findings of fact it was uncontroverted that appellant was aware that the septic system required repair, but did not attend to it.[7]

Traditionally, the question of what constituted waste was determined primarily by consideration of whether the act or acts of the tenant resulted in injury to the reversioner or remainder/man. *See generally* 2 Tiffany, Real Property § 630, 630 (3rd ed. 1939). Recently, however, in a case involving acts of tenants that resulted in injury to co-tenants, this Court held that "when an act of ownership is contrary to the co-tenant[s]' rights in a way that it alters the character of the common property, it typically involves the commission of waste." *Beesley v. Hanish*, 70 Md.App. 482, 492–93, 521 A.2d 1235 (1987). And that, "in Maryland, a tenant is liable for the actual damage suffered by the property caused when he or she commits waste." *Id.* at 493, 521 A.2d 1235.

---

**7.** The record is unclear with respect to what state the septic system was in prior to the court's order that appellant be made responsible for maintenance. According to Mr. Coutant, when he left the house the septic system needed a new top, but when that was is not clear. The record next reflects that Mrs. Coutant obtained an estimate in 1986 which was in the amount of $2,200 to repair a collapsed septic system.

The house was ultimately sold before the system was fixed, but according to the court's opinion the appraisal report indicated that the state of the system contributed to the house's reduction in value and thus a diminished sales price.

There are several types of waste, one of which, applicable to the instant case, is "permissive waste," which involves acts of omission rather than commission on the part of the tenants. Tiffany, at 630.

Whether a particular act constitutes waste is generally considered a question of fact for the trier of fact dependent upon condition and usages, character of the premises, and reasonableness of use. Tiffany at 631. As early as 1818 the Supreme Court of Appeals of Virginia held that cases involving waste "depend[ ] very much upon the circumstances attending each case." *Findlay v. Smith,* 6 Munf. 134, 138 (1818).

According to the trial court's findings of fact, appellant knew that the septic system was in need of repair, but chose to ignore it.[8] The Memorandum and Opinion of 13 August 1985, in which appellant was made responsible for maintenance expenses, did not include, nor is there any indication in the record that the court was asked to include, a dollar limitation on the maintenance expenditures.

■ We hold that the court did not err in finding that the repair of the septic system constituted a maintenance expense and in finding that appellant's neglect constituted waste. Presumably, the price for which the house was sold and thus the net proceeds available for distribution between the parties as co-owners was reduced by $2,200, the cost of repairing the septic system, by virtue of its needing repair. It is proper that Mrs. Coutant bear that entire cost. But in assessing her with the full cost, to be paid over to Mr. Coutant out of her share of the proceeds, the court erred. Holding Mrs. Coutant responsible for waste in the amount of $2,200 is based upon the assumption that but for her failure to repair the septic system the house would have sold for $2,200 more than it did. Her waste, therefore, cost

---

8. The court reached a different conclusion with respect to termite damage. It found that appellant had undertaken to treat the infestation and, there being no suggestion that appellant acted irresponsibly, the court declined to hold her solely responsible.

the joint entity $2,200. In the absence of any adjustment, each party would bear half that loss. Since Mr. Coutant lost only $1,100 as a result of the waste committed by Mrs. Coutant, that is the amount appellant should have been required to reimburse appellee out of her share of the proceeds.

## V

█ Finally, appellant contends that the chancellor committed reversible error when he ruled that she would not receive post-judgment interest on the $2,000 counsel fee that was reduced to monetary judgment in the decree of divorce dated 13 August 1985.

We note at the outset that while the non-payment of the $2,000 judgment was raised at the hearing, and Mr. Coutant stipulated that it had not been paid, post-judgment interest was not mentioned until appellant's post-trial memorandum.

In any event, the trial court chose to address the post-judgment interest. In the Memorandum and Opinion dated 23 November 1988, the chancellor directed that $2,000, without interest, be deducted from Mr. Coutant's share of the proceeds from the sale of the house. There was no explanation for the omission of interest as part of the judgment line against Mr. Coutant's moiety in the realty.

Maryland Rule 2–604(b) mandates that "[a] money judgment shall bear interest at the rate prescribed by law from the date of entry." [9] *See also, McClayton v. McClayton,* 68 Md.App. 615, 620, 515 A.2d 231 (1986). Striking out the interest that had accumulated by virtue of that rule since 13 August 1985 was, in effect, a modification of a judgment long after it had become enrolled. There being a total absence of any claim of fraud, mistake, or irregularity in the judgment, such modification was beyond the court's jurisdiction. Md. Rule 2–535(b).

---

**9.** Ten percent per annum. Md.Cts. & Jud.Proc.Code Ann., § 11–107(a).

**598**

*Summary*

We find no error in the award of contribution for mortgage payments and, accordingly, affirm that part of the judgment from which this appeal was taken. We do find that the court erred in assuming that there remained nothing for it to decide with respect to appellant's request for a monetary award; in ordering payment to appellee, out of the fund belonging to both parties, $11,000 that appellee borrowed from his mother; in assessing $2,200 against appellant for the loss to the common fund by reason of her waste in such a manner as to duplicate her loss and provide a windfall for appellee; and in not allowing appellant to recover post-judgment interest on a judgment that constituted a lien against appellee's one-half interest in their co-owned property. We must reverse those portions of the judgment, therefore, and remand for further proceedings.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART, AND CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID BY APPELLEE.