CHARLES HAUSMANN, JR., Plaintiff and Counterdefendant-Appellant and Cross-Appellee, v. GEORGE HAUSMANN, Defendant and Counterplaintiff-Appellee and Cross-Appellant.

Fifth District   No. 5—91—0180

Opinion filed July 13, 1992.

John Long, of Troy, for appellant.

David L. Miller, of Vandalia, for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

Charles Hausmann, the plaintiff, filed suit against his uncle, George Hausmann, the defendant, concerning real estate in which Charles held a remainder interest following George's life estate. In the first of two counts, Charles alleged that George had committed waste by failing to pay the 1986 real estate taxes due on the land and asked for a declaration of the parties' rights, an order directing fu-

ture payment of taxes, and a reimbursement to Charles for the amount he had paid to redeem the property from sale for delinquent taxes. In count II, Charles alleged that his uncle's failure to pay the taxes was intentional and was done in order to deprive Charles of his interest by having George's stepson purchase the land at the tax sale. Charles prayed for compensatory and punitive damages.

George Hausmann filed a counterclaim alleging that Charles had not repaid a loan of $5,000 on an unwritten agreement. George also claimed that Charles owed him an amount for rental and storage of personal property on the land in issue.

After a bench trial the court entered judgment for Charles on count I of his complaint and awarded him $1,671.20 plus interest of $194.33. On count II the court awarded Charles $7,500 in punitive damages.

On the counterclaim the court found for George and against Charles for the $5,000 claimed but found for Charles on the amount allegedly due for rental and storage.

On appeal Charles Hausmann contends that the trial court's award of the $5,000 was contrary to the manifest weight of the evidence and that the trial court erred in not entering an injunction against the defendant requiring him to pay real estate taxes on the land in the future. The defendant cross-appeals alleging the trial court erred in reconstituting the plaintiff's amended complaint, in granting punitive damages, in failing to find that the plaintiff's redemption of the 1986 taxes was a voluntary act, in stifling an attempted impeachment, and in entering judgment for Charles on the rental-and-storage issue. We affirm.

Esther Buckley, the plaintiff's grandmother, and the mother of the defendant, deeded her son, George Hausmann, a life estate interest in the property involved with a remainder upon George's death to her grandson, Charles Hausmann. George operated an asphalt business on this land from 1958 until January 1, 1988, when he sold the business to his wife, Ruby Hausmann, for $10.

In 1982 the plaintiff started a roofing business in the building located on the disputed land, and sometime that year George hired Charles to repair the roof on that building. Six months later 25% of the roof blew off, and Charles repaired it at an additional cost of $2,000. George testified that Charles at that time promised if the roof blew off again to repair it free of cost.

George testified that the roof was again damaged on the morning of April 22, 1984. According to George, Charles acknowledged that he had promised to repair the roof but claimed that he required an addi-

tional $5,000 for materials and insurance. George stated that he loaned Charles the $5,000 and Charles then repaired the roof. Charles, however, testified that he had borrowed the $5,000 on April 25 to finance an independent project, that the damage to the roof did not occur until April 27, and that the defendant agreed to forgive the $5,000 loan in exchange for Charles' repair of the roof.

On March 23, 1987, George Hausmann, through his attorney of over 20 years, Martin Corbell, proposed a plan to buy plaintiff's interest in the property. George would deposit a certain amount of money in escrow for Charles, who would in turn allow the land to pass through a tax sale. Ultimately George would regain the unencumbered title by tax deed. The proposal was rejected by Charles.

In the fall of 1987 George Hausmann, allegedly acting on the advice of his attorney, did not pay the real estate taxes for the property in question. On October 26, 1987, the premises were subjected to sale for delinquent taxes. Prior to the sale, Stacy Stewart, the defendant's 19-year-old stepson, arranged to purchase the premises at the sale. For this purpose Stewart enlisted the aid of Roberta Quandt, a secretary in the firm of Martin Corbell, long-time attorney for the defendant. Quandt testified that she attended the sale and acquired the property for Stacy Stewart for $771.02 at a 0% interest rate.

On January 6, 1988, the defendant sent Charles a letter terminating his use of the premises and demanding rental of $5 a day for plaintiff's personal property not thereafter removed.

On January 26, 1988, Charles Hausmann redeemed the premises by paying $778.02 on the still delinquent 1986 real estate taxes.

Defendant did not pay the 1987 real estate taxes on the land when due in 1988, and when the premises were sold for delinquent taxes, Charles bid them in at 0% for $893.18 on November 21, 1988.

On February 18, 1988, plaintiff filed his original complaint.

■■ We first address the issue of the $5,000 loan. Plaintiff claims the trial court's judgment awarding defendant the $5,000 was against the manifest weight of the evidence and should be reversed. Where the trial court sits without a jury, its findings will not be disturbed unless they are contrary to the manifest weight of the evidence. (*Harris Trust & Savings Bank v. Village of Barrington Hills* (1989), 133 Ill. 2d 146, 157, 549 N.E.2d 578, 582.) The plaintiff makes much of the fact that the defendant never specifically stated that the plaintiff had obligated himself to repair the roof at no further cost to the defendant. However, this is easily inferred by the wording of the counterclaim, the circumstances testified to by George, and the fact that he consistently referred to the $5,000 as a loan, one which had not been

repaid or forgiven. The plaintiff also proposes that the defendant's subsequent conduct, that is, his failure to demand payment, belied his testimony that the $5,000 was a loan and had never been repaid. Given the fact that the parties were closely related, often interacted in social and business matters, and shared usage of the property, such a delay, however surprising, cannot be said to be conclusively inconsistent with a loan. Similarly, plaintiff states that defendant's testimony concerning the tax sale was so improbable as to be obviously and willfully false; thus, the trial court could have rejected all of defendant's uncorroborated testimony. (*McDonald v. Industrial Comm'n* (1968), 39 Ill. 2d 396, 403, 235 N.E.2d 824, 828.) Since, however, questions as to the credibility of witnesses are ordinarily best left in the hands of those who see and hear them testify, and since rejection of defendant's testimony was at the trial court's discretion, we see no reason to rule otherwise. This being said, we cannot say that the holding of the trial court on this issue was contrary to the manifest weight of the evidence; therefore, we affirm the trial court's ruling on the $5,000-loan issue.

The plaintiff also contends that, after finding the defendant committed waste on the land in question, the trial court erred by not entering an injunction against the defendant compelling him to pay future real estate taxes. Defendant counters that the trial court incorrectly recognized a cause of action on this count in that no Illinois court has ever found failure to pay real estate taxes to equal waste; thus, this was not an equity matter and an equitable remedy such as an injunction would be improper.

■ We address first the defendant's contention as to whether or not there was a valid cause of action. Defendant correctly points out that no statute or case exists in Illinois specifically declaring the failure of a life tenant to pay property taxes to constitute waste. It has long been accepted, however, that a life tenant has a duty to pay real estate taxes assessed against the land during his life tenancy. (*Huston v. Tribbetts* (1898), 171 Ill. 547, 550, 49 N.E. 711, 711.) The issue then becomes, can a breach of this duty give rise to an action in waste?

Breach of this duty has been held in other jurisdictions to constitute waste. In *Thayer v. Shorey* (1934), 287 Mass. 76, 81, 191 N.E. 435, 437, the supreme court of Massachusetts, citing *Wade v. Malloy*, 16 Hun. (N.Y.) 226, held that when a life tenant fails in his duty to pay taxes, an action of waste will lie against him. The Missouri Supreme Court in *Farmers Mutual Fire & Lightning Insurance Co. v. Crowley* (1945), 354 Mo. 649, 190 S.W.2d 250, stated that a life tenant has a duty to pay taxes, make ordinary repairs, and keep down inter-

est on encumbrances and his failure to perform these duties falls under the extension of the rule which prohibits waste.

In *Bond v. Lockwood,* the Illinois Supreme Court cited the English common law definition of waste:

> "Any act or omission which diminished the value of the estate or its income, or increased the burdens upon it or impaired the evidence of title thereto, was considered waste." (*Bond v. Lockwood* (1864), 33 Ill. 212, 221.)

More recently:

> "Waste occurs when someone who lawfully has possession of real estate destroys it, misuses it, alters it or neglects it so that the interest of persons having a subsequent right to possession is prejudiced in some way or there is a diminution in the value of the land being wasted." *Pasulka v. Koob* (1988), 170 Ill. App. 3d 191, 209, 524 N.E.2d 1227, 1239, citing 78 Am. Jur. 2d *Waste* §1 (1975).

Plaintiff argues that a life tenant's failure to perform his duty to pay the real estate taxes levied upon the land in which he holds his life tenancy, thereby subjecting the land to possible sale for delinquent taxes, may increase the burden upon the land, impair evidence of title, and prejudice the interests of persons with a subsequent right to possession, thereby giving rise to a cause of action in waste.

Defendant, on the other hand, asserts that such a finding is not particularly logical when considering the lengthy and detailed procedures, provided by the Revenue Act of 1939, which must be fulfilled before a divestiture of title in favor of a tax purchaser can occur. (Ill. Rev. Stat. 1989, ch. 120, pars. 705 through 752.1.) Waste, however, is more often a process, a series of acts or omissions, rather than a singular event. A structure need not completely collapse before a cause of action in waste will be found to exist. To hold otherwise would be to deny an adequate remedy until after the waste was completed, or nearly so. Such a ruling would belie the very nature of equity, which is fairness. Waste, when possible, should be arrested rather than allowed to run its full course.

Defendant also points out that waste is generally limited to physical damage to the property. (*Metropolitan Life Insurance Co. v. W.T. Grant Co.* (1944), 321 Ill. App. 487, 501, 53 N.E.2d 255, 262.) This, however, is merely an historical observation rather than a rule of law.

We hold that failure to pay real estate taxes on a life estate by the life tenant may give rise to a cause of action in waste. As such, an injunction would not be an improper remedy against said waste. (*Wise v. Potomac National Bank* (1946), 393 Ill. 357, 361, 65 N.E.2d

767, 769.) We disagree, however, with plaintiff's argument that *Wise* suggests that where damages have been awarded against a life tenant for waste an injunction should be entered as a matter of course. *Wise* merely describes an injunction under these circumstances as an appropriate remedy which *may* be granted. Absent a showing of an abuse of discretion on the trial court's part, we will not second-guess its decision not to enter an injunction on behalf of the plaintiff. Given that defendant was subjected to both actual and punitive damages, the trial court may have decided that an injunction was simply unnecessary. We find no abuse of discretion in the trial court's failure to issue an injunction against the defendant.

■ We now address the defendant's issues on cross-appeal. Defendant first alleges that the trial court erred in reconstituting count II of plaintiff's amended complaint. After defendant had moved to dismiss count II, Judge Eberspacher entered a written order striking language relating to a conspiracy theory and reconstituting count II into an allegation relating to a cause of action for waste. Under the circumstances, the most suitable approach would have been for Judge Eberspacher to dismiss count II and grant plaintiff leave to file an amended count II. However, in view of our holding on the waste issue and in view of the fact that defendant cites no authority on this point, we do not find it an adequate ground for reversal.

■ The defendant continues that the trial court erred in granting plaintiff the punitive damages prayed for in count II of plaintiff's complaint. Most of defendant's argument relates count II's alleged failure to state a cause of action which we have already addressed. Defendant also claims punitive damages were improper in that defendant acted in good faith and upon advice of counsel. This, however, is not borne out by the record. Defendant's attorney, Martin Corbell, expressly testified that at no time did he tell George Hausmann not to pay his taxes. In fact, the record tends to suggest that, contrary to George's claims of good faith, his failure to pay the taxes was little more than a thinly veiled attempt to divest the plaintiff of his interest in the land. Defendant's story that his 19-year-old stepson endeavored to gain title to the property with the aid of Quandt, an employee of defendant's attorney for over 38 years, without any help or encouragement from the defendant is at best improbable. Punitive damages may be awarded when tortious acts are committed with fraud, or when defendant acts willfully or with such gross negligence as to indicate a wanton disregard for the rights of others. (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 186, 384 N.E.2d 353, 359.) We find no error in the trial court's award of punitive damages. Where

punitive damages are assessed, it is in the nature of punishment and as a warning and example to deter the defendant and others from committing like offenses in the future. *Kelsay*, 74 Ill. 2d at 186, 384 N.E.2d at 459.

Defendant alleges that Charles' redemption of the 1986 real estate taxes was a voluntary act taken under no compulsion and did not, in and of itself, give rise to a legally enforceable cause of action against George. We find this contention completely without merit. It has already been established that the defendant had a duty to pay the real estate taxes, and that failure to do so gave rise to a valid cause of action for waste on behalf of the plaintiff. To suggest that the plaintiff, who took action to protect his interests and rights, was a volunteer whose actions liberated the defendant of all duties and obligations is untenable. The defendant failed in his duty. The plaintiff was compelled to act or risk possible divestment. The plaintiff is entitled to compensation. We refuse to hold that an individual must wait until the last possible moment, before moving to protect his rights, to avoid being labeled a volunteer.

Defendant claims that the trial court erred when it interjected inquiry on matters dealing with the $5,000 loan, thereby stifling an attempted impeachment or attack on plaintiff's credibility. At the outset we would point out that, since we have affirmed the trial court's ruling on the $5,000 in favor of the defendant, any interjection by the trial court was, at least on that issue, harmless. Defendant suggests, however, that the trial court placed great emphasis on the credibility of both parties in reaching its findings and thus denied defendant the opportunity to fully attack plaintiff's overall credibility by its interruption. A trial judge has the right to question witnesses in order to elicit the truth or to increase enlightenment on material issues which seem obscure. (*People v. Palmer* (1963), 27 Ill. 2d 311, 314, 189 N.E.2d 265, 267-68.) The propriety of such examination must be determined by the circumstances of each case and rests largely in the discretion of the trial court, especially where the cause is tried, as here, without a jury and the danger of prejudice is lessened. (*Palmer*, 27 Ill. 2d at 315, 189 N.E.2d at 268.) Given that the trial court found for the defendant on this particular issue, coupled with the reality that the $5,000 loan was factually unrelated to the other issue of waste, we find the circumstances do not warrant a reversal.

Finally, the defendant claims that the trial court erred in entering judgment for plaintiff and against defendant on defendant's counterclaim for rental and storage. At trial defendant admitted that

the $5-per-day rent figure demanded of plaintiff had no basis in actuality. When pressed further, defendant suggested that $2 a day, in his opinion, would be more reasonable. The claimant carries the burden of proving damages to a reasonable degree of certainty, and evidence of damages cannot be remote, speculative or uncertain. (*In re Estate of Halas* (1991), 209 Ill. App. 3d 333, 349, 568 N.E.2d 170, 181.) On appeal following a bench trial, a reviewing court will not reverse the trial judge's determination of damages unless that determination is against the manifest weight of the evidence. (*Halas*, 209 Ill. App. 3d at 349, 568 N.E.2d at 181.) Defendant's estimation of rental and storage damages was at best speculative and admittedly uncertain. Absent any other evidence establishing these alleged damages, we cannot say that the trial judge's determination was against the manifest weight of the evidence.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

GOLDENHERSH, P.J., and WELCH, J., concur.