**NORTH AMERICAN SECURITY LIFE INSURANCE CO., Plaintiff,**

v.

**HARRIS TRUST AND SAVINGS BANK, et al., Defendants.**

**No. 93 C 330.**

United States District Court, N.D. Illinois, Eastern Division.

July 13, 1994.

Michael B. Weininger, Gregory T. Diamond, Katz, Randall & Weinberg, Chicago, IL, for plaintiff.

Howard A. Harris, Lincolnwood, IL, David H. White, Northfield, IL, for Harris Trust and Sav. Bank, Equest XI Income Partnership, Joseph Garafolo, Harold Lebovic, Marvin Siegel, Paul Theodosis.

James W. Malloy, Chicago, IL, for Richard Prendergast.

### MEMORANDUM OPINION

GRADY, District Judge.

Before the court is plaintiff's motion for summary judgment. For the reasons explained in this opinion, the motion is granted.

## BACKGROUND

Plaintiff North American Security Life Insurance Co. ("NASL") extended a $705,000 mortgage loan to defendant Harris Trust and Savings Bank as trustee of a trust ("the Trust"), of which defendant Equest Income Partnership ("Equest") was the sole beneficiary. Defendants Joseph Garafolo, Harold Lebovic, Marvin Siegel and Paul Theodosis (collectively "the Partners") were general partners in Equest. The mortgage concerned a piece of real property at 7756 West Madison Street in River Forest, Illinois. The loan granted NASL a security interest in the property and in certain other collateral. As part of the loan transaction, Equest also executed a Beneficiary Certificate ("the Certificate") and a Limited Recourse Agreement ("the Agreement"). The Certificate included warranties that: (1) the trust would own a fee simple interest in the property "free and clear of all liens, encumbrances and claims and charges except taxes not yet due and payable and others as may be approved by Lender," and (2) that Equest "will be the sole beneficiary of the Trust free and clear of all liens, encumbrances, claims and charges except taxes not yet due and payable." Complaint, Exh. 6 at ¶ 1. The Agreement provided in relevant part:

> Notwithstanding anything to the contrary contained in the Loan Documents, the undersigned shall be personally liable, jointly and severally, to Lender for and shall indemnify Lender against all liability, costs and damages incurred by or asserted against Lender arising out of any or all of the following:
>
> (b) the commission of any waste on the property.

Complaint, Exh. 7 at ¶ 2.

After the Trust failed to pay real estate taxes on the River Forest property for 1991 and parts of 1990 and 1992, NASL accelerated the loan and brought this diversity action to foreclose the mortgage and NASL's security interest in other collateral. NASL paid $114,461.49 to the Cook County Clerk to redeem the unpaid property taxes after the clerk had held a tax sale. By agreement of the parties, foreclosure orders were entered as to Counts I and II, effectively mooting those counts. All that remains of this action is Count III, in which NASL seeks a money judgment in the amount of the real estate taxes the Trust did not pay.

In its motion for summary judgment, NASL argues that when the Trust's nonpayment of real estate taxes caused a tax lien to be placed on the property, Equest breached its promise in the Certificate that the property would be kept free and clear of all liens. NASL also argues that Equest is liable for the unpaid taxes under the terms of the Agreement because the unpaid taxes constitute "waste" for which Equest had agreed to indemnify NASL.

Because the latter issue regarding the definition of "waste" is dispositive in this case, the court will forego an analysis of the defendants' liability under the Certificate.

## ANALYSIS

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A "genuine issue of material fact exists only where 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.' " *Dribeck Importers, Inc. v. G. Heileman Brewing Co.,* 883 F.2d 569, 573 (7th Cir.1989) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)). In considering such a motion, the court must view all inferences in the light most favorable to the nonmoving party. *See Regner v. City of Chicago,* 789 F.2d 534, 536 (7th Cir.1986).

### I. Under Illinois Law, Waste Includes Nonpayment of Taxes.

In this case, there is no dispute that the parties executed the Agreement calling for Equest to be liable for waste regarding the River Forest property, and there is no dispute that the Trust failed to pay the real estate taxes on the property. Therefore if

nonpayment of real estate taxes is deemed to be waste, NASL will be entitled to judgment as a matter of law.

Relatively few courts have had occasion to consider whether waste includes nonpayment of real estate taxes by the mortgagor or life tenant. But Illinois courts have discussed waste in broad terms as occurring "when someone who lawfully has possession of real estate ... neglects it so that the interest of persons having a subsequent right to possession is prejudiced in some way or there is a diminution in the value of the land being wasted." *Pasulka v. Koob*, 170 Ill.App.3d 191, 121 Ill.Dec. 179, 191, 524 N.E.2d 1227, 1239 (3d Dist.), *appeal denied*, 122 Ill.2d 579, 125 Ill.Dec. 222, 530 N.E.2d 250 (1988). The Illinois Appellate Court also has rejected the notion that the common-law definition of waste was limited to physical deterioration of property, referring to that notion as "a historical observation rather than a rule of law." *Hausmann v. Hausmann*, 231 Ill.App.3d 361, 172 Ill.Dec. 937, 941, 596 N.E.2d 216, 220 (5th Dist.1992). In *Hausmann*, the court held that a life tenant's failure to pay real estate taxes on the life estate could give rise to a cause of action for waste, citing the above-quoted language in *Pasulka* giving a broad construction to the common-law meaning of waste. *Id.*, 596 N.E.2d at 219–220.

■ Citing *Hausmann* and *Pasulka*, Judge Kocoras recently held, in a decision affirmed by the Seventh Circuit without a published opinion, that Illinois' common-law definition of waste included a mortgagor's failure to pay real estate taxes. *Capitol Bankers Life Ins. Co. v. Amalgamated Trust & Sav. Bank*, No. 92 C 4480, 1993 WL 594103, at *5 (N.D.Ill. May 6, 1993), *aff'd*, 16 F.3d 1225 (7th Cir.1994).[1] This broad conception of waste appears to be part of an emerging legal trend with roots dating to the 19th Century. *See Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 123 (2d Cir.1994) (applying New York law to hold that failure to pay real estate taxes constitutes waste,

and citing, among other authorities, *Hausmann*, *Capitol Bankers* and *Pike v. Wassell*, 94 U.S. 711, 715, 24 L.Ed. 307 (1876)).

NASL urges this court to follow *Capitol Bankers*, and we see no reason not to do so, considering the Illinois courts' apparent unwillingness to adopt a narrow definition of waste. *Hausmann*, 596 N.E.2d at 220; *Pasulka*, 524 N.E.2d at 1239. The facts of *Capitol Bankers* are strongly on point, as the language in the relevant contractual provision in that case virtually mirrors the language in the Agreement.

## II. The Parties Did Not Contract for a Narrower Definition of Waste.

■ Equest argues in the alternative that if the Illinois common-law definition of waste does include nonpayment of real estate taxes, the parties in this case contracted for a narrower definition of waste that did not include nonpayment of taxes.

Equest points to language in the mortgage requiring the mortgagor to "keep the Premises in good condition and repair, without waste, and free from mechanics' liens or claims for lien not expressly subordinated to the lien hereof. . . ." Complaint, Exh. 2 at ¶ 1. Equest contends that because this paragraph places the conjunction "and" between the word "waste" and the word "liens," the mortgage envisioned that waste would be separate from liens and generally would be restricted to physical deterioration only.

Equest also points to two other paragraphs in the mortgage. One discusses taxes and the mortgagor's obligation not to create superior liens or encumbrances, but does not use the word "waste." *Id.* at ¶ 26.1. The other includes the mortgagor's promise not to commit or permit waste and to keep the property free from "other liens or claims for liens not expressly subordinated to the lien hereof." *Id.* at ¶ 26.4. This latter paragraph also includes the mortgagor's promise not to "do nor permit to be done anything to the Mortgaged Premises that may impair the value thereof." *Id.* Equest maintains that

1. Except to support a claim of res judicata, collateral estoppel or law of the case, unpublished orders of the Seventh Circuit cannot be cited as precedent, even by this court. U.S.Ct. of App. 7th Cir. Rule 53(b)(2)(iv)(b). But the rule does not bar a party from simply advising the court

that a nonbinding but persuasive district court opinion, which is not subject to Circuit Rule 53, has been affirmed on appeal. *Estate of Warner v. United States*, 743 F.Supp. 551, 556 (N.D.Ill. 1990). The affirmance may be noted in a citation, as it is "a matter of public record." *Id.*

these paragraphs show that the contract treats "waste" and "liens" as discrete concepts. At minimum, Equest argues, the contract is ambiguous on the scope of "waste," and the ambiguity entitles Equest to a trial on the factual issue of the parties' intent.

The court disagrees with Equest's argument that the contract expressly limited waste to physical deterioration. Equest's contention that ¶ 26.1 of the mortgage discusses taxes and liens "totally outside any concept of 'waste,'" Memorandum in Support of Response to Motion for Summary Judgment ("Response"), at 10, implies that the parties would have included a reference to waste in that paragraph had they intended unpaid taxes to be encompassed within the definition of waste. But ¶ 26.4 of the mortgage does include a reference to waste in the same paragraph as the requirement that the mortgagor not do anything to impair the value of the mortgaged property. Again, the Illinois courts have defined waste as including acts resulting in "a diminution in the value of the land being wasted." *Pasulka,* 524 N.E.2d at 1239. As Judge Kocoras concluded after interpreting a mortgage provision identical to ¶ 26.4, that paragraph indicates that "to the extent the parties have defined waste, the loan documents are consistent with the Illinois common law definition." *Capitol Bankers,* 1993 WL 594103, at *5. Because that definition includes tax liens, the mortgage contract's use of the conjunction "and" between "waste" and "liens" does not in itself provide a sufficient basis to construe the contract in derogation of Illinois' common-law definition of waste. *See id.* Nor does it render the contract ambiguous. Where the parties simply disagree as to the meaning of a contract term, the court will give the term a construction that comports with the common law rather than derogates it. *Id.*

### III. Equest's Argument that NASL Effectively Waived its Right to Recover for Nonpayment of Taxes Presents No Genuine Factual Dispute.

■ Equest also argues that a disputed issue of material fact exists as to whether the parties orally modified the contract so as to release Equest from its liability for waste as it concerns the nonpayment of real estate taxes. The parties do not dispute that NASL agreed to relieve the Trust of its obligation to make monthly deposits into a tax escrow account.[2] NASL disputes Equest's contention that implicit in this verbal accord was an acknowledgement by the parties "that the taxes would not be paid when due," such that "even if failure to pay taxes is 'waste', that failure is no longer actionable." Response at 16.

The court will analyze this argument in terms of whether there is a genuine dispute over whether NASL agreed or acquiesced in the notion that the Trust did not have to pay the real estate taxes when they became due. A dispute is "genuine" in the summary judgment context only when there is sufficient evidence upon which a reasonable jury could return a verdict in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The record contains ample evidence from Equest itself that the parties did not agree or acknowledge that the waiving of the monthly tax escrow deposits contemplated the release of the Trust's obligation under the mortgage to pay the real estate taxes when due. Rather, the agreement allowed the monthly deposit requirement to be reinstated if taxes went unpaid, as defendant Garafolo, one of Equest's general partners, testified in his deposition:

Q. Do you know how you requested that the letter include in the commitment letter a provision allowing a waiver of the tax impound provisions of the mortgage?

A. I believe initially it was verbally to Baird & Warner, the mortgage banker.

\*　　\*　　\*　　\*　　\*　　\*

Q. In your initial discussions with Ms. Horn [of Baird & Warner] regarding waiver of the impound, was there any discus-

---

**2.** Mortgage lenders commonly require borrowers to make monthly deposits into an account known as a "tax escrow" account. The deposits usually constitute one-twelfth of the estimated yearly tax bill on the mortgaged property.

sion as to how Equest would pay the taxes, when it would pay the taxes, things of that nature?

A. Yes. I believe so.

Q. What was said with regard to when Equest would pay the taxes?

A. Well, the taxes were to be paid when the tax bills were due.

\* \* \* \* \* \*

Q. Did they [the lender] ever ask you for deposits because the taxes were unpaid, in a letter saying—starting in January of '92, we want $1,000 a month in a tax escrow because the taxes are unpaid?

A. Yes.

Q. Did the lender ever subsequently withdraw that demand, say forget it, you don't need to make deposits?

A. I don't think so, not to my knowledge. We made a counterproposal.

Q. But did the lender ever accept your counterproposal?

A. No. They did not.

\* \* \* \* \* \*

Q. What is the basis for the allegation … that there was a modification of the loan to the effect that the taxes only need be paid to protect the property from the ultimate tax foreclosure? What's that based on?

[Objection omitted.]

A. Basically, we felt that the—if the taxes could be paid prior to a tax sale, we would do the best we can to protect that—protect our own investment, not only to protect the lender, but to protect our own investment.

\* \* \* \* \* \*

Q. And was it a correct statement that the nonpayment of taxes was an event of default as defined in the loan documents?

A. I believe so.

Q. And was it a correct statement the loan was in default as of July 8, 1992, for nonpayment of taxes?

A. Yes.

Reply Memorandum of Plaintiff in Support of Motion for Summary Judgment on Count III, Exh. 4 at 21, 24, 71–72, 76. Garafolo's testimony shows that although Equest and the Partners may have wished or hoped that the mortgage would not be declared to be in default until an actual tax sale, NASL never agreed that taxes need not be paid when due or that Equest was relieved of any of its obligations under the Agreement. NASL also has provided the court with documents, including a commitment letter, a side letter agreement and a letter from NASL to Garafolo, all of which show that the agreement to waive the tax escrow deposits provided that the deposit requirement would be reinstated if the taxes went unpaid, and that in any event NASL fully expected the taxes to be paid. *Id.,* Exhs. 5, 6, 7.

Defendants have presented no facts to the contrary, and in their statement of additional facts under Local Rule 12(N), they included only conclusory statements about how the loan agreement was modified, with no reference to exhibits, affidavits or other evidentiary material. The Seventh Circuit has held that this alone supports the entry of summary judgment against the nonmovant. *See Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 924 (7th Cir.1994).[3] In any event, the court finds that there is no genuine dispute as to whether NASL made any agreement that the Trust did not have to pay the real estate taxes when due, or that Equest or its Partners would not be liable for waste if the taxes were not paid.

### CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is granted, and the court will enter judgment for plaintiff in the amount of $114,461.49, the amount NASL

---

**3.** The Seventh Circuit in *Waldridge* stated: "The factual statement required by Local Rule 56.1 [our Local Rule 12(n)'s cousin in the Southern District of Indiana] is not a mere formality. It follows from the obligation imposed by Fed. R.Civ.P. 56(e) of a party opposing summary judgment to identify specific facts that establish a genuine issue for trial, and it substantially facilitates the district court's task in deciding whether a trial is indeed necessary. Ms. Waldridge's failure to comply with the local rule was, accordingly, not a harmless technicality, but a mistake that our precedents (for good reason) have deemed fatal." *Id.* at 924.

had to pay to redeem the taxes the Trust had failed to pay.