784 A.2d 39

**BOUCHER INVESTMENTS, L.P.**

v.

**ANNAPOLIS–WEST LIMITED PARTNERSHIP, et al.**

**No. 333, Sept. Term, 2000.**

Court of Special Appeals of Maryland.

Oct. 31, 2001.

2

Thomas Gisriel (Christopher W. Poverman, Betty Sue Diener and Hodes, Ulman, Pessin & Katz, P.A. on the brief), Towson, for appellant.

Susan Wilkens (Howard Cassin and Wartzman, Omansky, Blibaum, Simons, Cassin & Sagal, P.A. on the brief), Towson, for appellees.

Argued Before KRAUSER, JOHN J. BISHOP, JR., (Retired, specially assigned), RAYMOND G. THIEME, JR., (Retired, specially assigned), JJ.

KRAUSER, Judge.

The question before us is what constitutes "waste," a question which, notwithstanding its medieval roots, has largely evaded contemporary appellate scrutiny in this State and others. Indeed, our research has failed to disclose any Maryland cases during the past century that speak to this issue in the context of the mortgagor-mortgagee relationship, the relationship between the parties to this appeal.

This question is now before us as a result of a claim of waste made by the holder of a second mortgage on commercial property against the mortgagors (grantors of the Deed of Trust), after the holder failed to recover its loan amount when the property was sold at foreclosure. Appellant, Boucher Investments, L.P., the holder of that second mortgage, asserts, as it did below, that the failure of the mortgagors— appellees Annapolis–West Limited Partnership, A–W GP Corporation, Lawrence Posner, and Lawrence Volper [1]—"to negotiate parking access" for the commercial property in question ("Property") resulted in a substantial reduction in value of that property at foreclosure, and thus constituted waste. The Circuit Court for Anne Arundel County disagreed, and we do too. We shall therefore affirm the judgment of that court.

## BACKGROUND

The commercial property securing the Deed of Trust and the Note held by appellant is located at 2083 West Street in

---

1. According to appellant's complaint, A–W GP Corporation, Lawrence Posner, and Lawrence Volper were general partners of Annapolis–West Limited Partnership.

Annapolis, Maryland. The Deed of Trust was originally granted by appellees in 1984 to secure a debt to James Hightower. In 1988, Hightower assigned the Deed of Trust and Note to B & B Defined Benefit Plan. Appellant acquired the Note in 1988 when B & B Defined Benefit Plan was liquidated.

The Property consists of an office building and a parking area capable of accommodating approximately ten to twelve cars. To provide for additional parking, a previous owner of the Property had entered into a twenty-year contract with Parole Shopping Center, Inc. for the use of its parking lot, which is adjacent to the Property. Despite the expiration of the contract in 1991, the tenants of the Property continued to use the lot until 1996, at which time a fence was erected to prevent unauthorized parking.

Both the Deed of Trust and the Note evidencing the debt secured thereby contained non-recourse clauses.[2] The Property, as well as rents generated by the property,[3] served as

---

**2.** The non-recourse provision of the Deed of Trust states:

Neither Borrower nor any partner of Borrower shall have any personal liability for repayment of the indebtedness evidenced by the Note secured hereby or for the performance or breach of any of the terms, covenants or conditions of this Deed of Trust, the Note secured hereby or any other loan document relating thereto. The Lender agrees that (1) in any action to enforce the Note secured hereby, neither Borrower nor any partner or [sic] Borrower shall be personally liable for any deficiency or other personal money judgment and no deficiency judgment will be sought against Borrower or any partner of Borrower in such action and (2) no action shall be brought against Borrower or any partner of Borrower for payment of said indebtedness; provided, however, that nothing contained in this paragraph shall impair the validity of the indebtedness hereunder or in any way affect or impair the validity of the Note secured hereby or the right of the Lender to seek and obtain enforcement hereof following a default by Borrower.

There is no substantive difference between the non-recourse provision in the Deed of Trust and that in the Note.

**3.** The Deed of Trust contains a provision entitled "Assignment of Rents; Appointment of Receiver," which provides in part:

As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 18 hereof or abandonment of the

security for the loan. In addition, the Deed of Trust contained a provision stating in part that the "[b]orrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property...." In 1991, appellees defaulted on the Note. To avoid foreclosure, the parties entered into a Note Modification Agreement. In 1996, appellees defaulted on the modified Note. Once again, to avoid foreclosure, the parties attempted to renegotiate payment of the Note. In 1998 appellees defaulted on the first mortgage on the Property, and the first mortgagee instituted foreclosure proceedings that resulted in a foreclosure sale. The proceeds from that sale were not sufficient to repay appellees' debt to appellant.

Consequently, on August 2, 1999, appellant filed a complaint in the Circuit Court for Anne Arundel County, alleging, among other things, that appellees' failure "to negotiate parking access for the [Property]" constituted "permissive waste of the property" because the lack of parking resulted in a "loss of tenants [and] ... income to the property." Appellant also claimed that the "City of Annapolis Planning Commission ha[d] confirmed that, unless adequate parking spaces are made available, the current occupancy permit will be rescinded and the permitted occupancy of the building will be lowered." No evidence, however, was ever presented that the City of Annapolis was planning to, or ever did, rescind appellees' occupancy permit. In brief, appellant asserted that the failure "to negotiate parking access for the [Property]" led to the diminution in value of the Property and foreclosure, which caused financial harm to appellant.

On October 15, 1999, appellees filed in the United States District Court for the District of Maryland a Notice of Removal. Shortly thereafter, the parties filed a "Stipulation of Remand," and on November 3, 1999, the district court filed an order sending the case back to the circuit court.

---

property, have the right to collect and retain such rents as they become due and payable.

On November 22, 1999, appellees filed a motion entitled "Motion To Dismiss, Or In The Alternative, For Summary Judgment." Attached to that motion were several exhibits, including the Deed of Trust and Note. In support of that motion, appellees claimed: first, that the non-recourse provision in the Deed of Trust and the Note relieved appellees of any personal liability for monies owed pursuant to the Note; second, that "the alleged failure to contract for additional parking does not constitute waste;" and third, that appellant's waste claim was barred by the statute of limitations. In reply, appellant filed an opposition. In that opposition, appellant asserted that appellees' motion "should be viewed as a Motion for Summary Judgment" because appellees attached to their motion "several exhibits," thus requiring the court "to look beyond the complaint and consider matters outside of the pleadings." That assertion, as we discuss below, conflicts with its later claim that appellees' motion was not one for summary judgment. Appellant further asserted, among other things, that summary judgment was inappropriate because there were "genuine disputes of material fact" and that, "before conducting discovery, it is very difficult, if not impossible, to accurately identify all material facts."

On February 22, 2000, the trial court conducted a hearing on appellees' motion. Before the court, counsel for appellant stated that it was "[his] understanding [that appellees] did not negotiate with Parole in good faith" and that, therefore, a "factual dispute" existed. Appellant also argued that "a waste claim can go forward in spite of a non-recourse agreement," and that there was a factual dispute regarding the statute of limitations.

After the hearing, the parties submitted supplemental memoranda. Appellant, in its supplemental memorandum, argued that waste is "conduct, including both acts of commission and of omission, on the part of a person in possession of land which is detrimental to the interests of another with an interest in the land," and that "[w]hat constitutes waste in any given case is an issue of fact." Appellant admitted, however, that it could "find no cases in which the failure to negotiate a lease for

parking lot space constituted waste" but nonetheless urged that summary judgment was improper because "the issue of whether the alleged actions constitute waste is inherently for the finder of fact" and that discovery was necessary "to learn, among other things, [appellees'] motives and actions in the handling of 2083 West Street."

On March 20, 2000, the trial court filed a Memorandum Opinion and Order. After setting forth findings of fact, the court declared that because appellees' "Motion To Dismiss, Or In The Alternative, Motion For Summary Judgment" contained attachments, it "should be considered a motion for summary judgment pursuant to [Maryland] Rule 2–501." The circuit court then noted that a non-moving party could be prejudiced when a motion to dismiss is treated as a motion for summary judgment, "because the non-moving party may not have the opportunity to put forth evidence relevant to a summary judgment determination." In the instant case, however, the court found that appellant would not be so prejudiced. After noting that appellant itself had argued in its initial response to appellees' motion, that appellees' motion should be treated as one for summary judgment, the court declared that appellant had ample opportunity to provide information to the court, and had taken "full advantage of this opportunity by filing three memorandums, including one following the hearing before this Court."

The court then summarized the parties' respective positions. Noting that appellant had argued, among other things, that summary judgment should not be granted "because there are some facts, not yet known, which would be at issue at a trial on the merits," the court found that because appellant "did not specifically mention which facts were in dispute, its argument amounts to no more [than] a mere allegation."

Applying definitions of waste set forth in *Jaffe–Spindler Co. v. Genesco, Inc.* 747 F.2d 253 (4th Cir.1984), and the Restatement (Third) of Property: Mortgages § 4.6 (Tentative Draft No. 3, 1994), the circuit court declared that there had been no "destruction, misuse, alteration or neglect" by appellees. It

further found that none of the criteria for waste as set forth in the tentative draft of the Restatement had been met "because there [was] no allegation that the property [was] in disrepair, that taxes [had] not been paid, or that any other monies [had] been wrongfully withheld." It therefore concluded "as a matter of law" that appellees had not committed waste. Having so ruled, the court declared that "the issues of the non-recourse clause and the statute of limitations [did] not need to be addressed." From that order, appellants noted this appeal.

## DISCUSSION

### I

Before reaching the question of what constitutes waste and whether, under that definition, appellees committed that tort, we must first address appellant's contention that the circuit court committed two procedural errors in granting appellees' request for summary judgment. First, according to appellant, the circuit did not treat appellees' motion "as one for summary judgment" because it "did not even consider in its decision the exhibits or the additional facts recited by the [appellees]." "If the court had truly considered [appellees'] motion as a motion for summary judgment," appellant argues, "the court would have found that there were genuine disputes of material fact and that discovery needed to proceed to resolve the issues in question."

Second, appellant claims that the circuit court erred in ruling on appellees' motion before appellant was able to conduct discovery to determine "the motives and actions of [appellees] in their handling of the commercial real estate at issue." It thereby prevented appellant from uncovering genuine issues of material fact.

Before the court may grant a motion for summary judgment under Maryland Rule 2–501, the movant must satisfy a two-part test. *DeGroft v. Lancaster Silo Co. Inc.,* 72 Md.App. 154, 159, 527 A.2d 1316 (1987). First, the movant "must clearly demonstrate the absence of any genuine issue of material fact." *Id.* "A fact is 'material' if it somehow affects the

outcome of the case." *Id.* at 160, 527 A.2d 1316. And second, the movant must "demonstrate that he is entitled to judgment as a matter of law." *Id.* at 159, 527 A.2d 1316. *See also* Md. Rule 2–501(a). Once the movant makes this showing, the burden shifts to the non-moving party to show "that there is a genuine dispute as to a material fact by proffering facts which would be admissible in evidence." *Beatty v. Trailmaster Products, Inc.,* 330 Md. 726, 737–38, 625 A.2d 1005 (1993). "[M]ere general allegations which do not show facts in detail and with precision are insufficient to prevent summary judgment." *Id.* at 738, 625 A.2d 1005. Moreover, " 'a dispute as to facts relating to grounds upon which the decision is not rested is not a dispute with respect to a *material* fact and such dispute does not prevent the entry of summary judgment.' " *Matthews v. Howell,* 359 Md. 152, 161, 753 A.2d 69 (2000)(quoting *Salisbury Beauty Schs. v. State Bd. of Cosmetologists,* 268 Md. 32, 40, 300 A.2d 367 (1973)). "In ruling on a motion for summary judgment, the court must consider the motion and response submitted by the parties in a light most favorable to the non-moving party." *Fearnow v. Chesapeake & Potomac Tel. Co. of Md.,* 104 Md.App. 1, 49, 655 A.2d 1 (1995), *aff'd in part, rev'd in part on other grounds,* 342 Md. 363, 676 A.2d 65 (1996). On appeal, "[w]e review the same information from the record and decide the same issues of law as the trial court." *Mercantile Club, Inc. v. Scherr,* 102 Md.App. 757, 764, 651 A.2d 456 (1995). And the standard we apply is whether the court's ruling "was legally correct." *Heat & Power Corp. v. Air Prods. & Chems., Inc.,* 320 Md. 584, 591, 578 A.2d 1202 (1990).

We begin our analysis by addressing appellant's claim that, because the trial court did not actually "consider in its decision the exhibits or the additional facts recited by the [appellees]," there are "serious questions" as to whether the court actually treated appellees' motion as one for summary judgment. Assuming that appellant is claiming that the circuit court actually treated appellees' motion as a motion to dismiss and not as a motion for summary judgment, we turn to Maryland Rule 2–322, which governs preliminary motions in

general and motions to dismiss in particular. Section (c) of that rule states in part:

> If, on a motion to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 2–501, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 2–501.

Thus, Maryland Rule 2–322(c) "gives the trial court discretion to convert a motion to dismiss to a motion for summary judgment by considering matters outside the pleading." *Hrehorovich v. Harbor Hosp. Ctr., Inc.,* 93 Md.App. 772, 784–85, 614 A.2d 1021 (1992). If matters outside the pleading are excluded by the trial court, "then it must decide the motion based on the legal sufficiency of the pleading." *Id.* at 782, 614 A.2d 1021. If, on the other hand, "the trial judge does not exclude such matters, then the motion shall be treated as one for summary judgment." *Okwa v. Harper,* 360 Md. 161, 177, 757 A.2d 118 (2000). In the event that a trial court decides to treat a motion as one for summary judgment, it must provide the parties with "a reasonable opportunity to present, in a form suitable for consideration on summary judgment, additional pertinent material." *Antigua Condominium Assoc. v. Melba Investors Atlantic, Inc.,* 307 Md. 700, 719, 517 A.2d 75 (1986). Indeed, a non-moving party may be prejudiced if a trial court treats a motion to dismiss as a motion for summary judgment by considering matters outside the pleading, but does not give the non-moving party "a reasonable opportunity to present material that may be pertinent to the court's decision, as required by Md. Rule 2–501." *Green v. H & R Block, Inc.,* 355 Md. 488, 502, 735 A.2d 1039 (1999).

In the instant case, the circuit court had before it far more than the parties' pleadings. Attached to appellees' motion, which was entitled "Motion To Dismiss, Or In The Alternative, Motion For Summary Judgment," were the following documents: the Deed of Trust, the Promissory Note, a

note modification agreement, a notice of foreclosure, a newspaper article, and a memorandum opinion and order from a contract dispute between appellees and a tenant. Moreover, in its opinion granting that motion, the circuit court noted these attachments and expressly observed that the parties' mortgage agreement included "a non-recourse clause ... which prevents a deficiency suit under the note." In sum, the court obviously considered "matters outside the pleading" in rendering its decision and thereby treated appellees' motion as one for summary judgment. Lest any doubt remains, the circuit court itself declared that appellees' "motion will be treated as one for summary judgment."

■ We also find no merit to appellant's contention that "if the court had truly considered [appellees'] motion as a motion for summary judgment, the court would have found that there were genuine disputes of material fact and that discovery needed to proceed to resolve the issues in question." As the circuit court noted, appellant argued that summary judgment was inappropriate because there were "some facts, not yet known, which would be at issue at a trial on the merits." In the trial court's assessment, appellant's arguments amounted to no more than "mere allegation." Our review of the record leads us to the same conclusion.

In appellant's opposition to appellees' motion, appellant contended that summary judgment was inappropriate because there existed genuine disputes of material fact. In support of that contention, appellant stated that appellees "dispute the facts alleged in the Complaint" and that "before conducting discovery, it is difficult, if not impossible, to accurately identify all material facts." Appellant also stated that "there is a factual dispute on the statute of limitations." At the motions hearing, moreover, counsel for appellant asserted that it was "[his] understanding [that appellees] did not negotiate with Parole in good faith" and that there was before the court a factual dispute as to "when the statute of limitations runs."

■ These assertions, however, failed to show "with particularity the material facts that [were] disputed." *Fearnow*, 104

Md.App. at 49, 655 A.2d 1. Consequently, they were insufficient to defeat a motion for summary judgment. Moreover, the circuit court's grant of summary judgment was based solely on its determination that appellees had not committed waste. Consequently, the factual dispute alleged by appellant as to the statute of limitations was not material. " '[A] dispute as to facts relating to grounds upon which the decision is not rested is not a dispute with respect to a *material* fact and such dispute does not prevent the entry of summary judgment.' " *Matthews,* 359 Md. at 161, 753 A.2d 69 (quoting *Salisbury Beauty Schs. v. State Bd. of Cosmetologists,* 268 Md. 32, 40, 300 A.2d 367 (1973)).

Finally, we are unpersuaded by appellant's claim that had the court treated appellees' motion as one for summary judgment, it would have allowed appellant to conduct discovery to generate facts in support of its claim. The trial court had more than sufficient evidence with which to conduct a summary judgment analysis and it fell within its discretion to do so. Memoranda and exhibits were presented by both parties before, during, and even after the summary judgment hearing. Indeed, the court invited the parties to submit supplemental memoranda after the hearing, which they both did.

Nor was appellant prejudiced by the circuit court's decision to treat appellee's motion as one for summary judgment. As the circuit court noted, appellant itself had argued, in its response to appellee's motion, that the motion should be treated as a motion for summary judgment. Moreover, as the court observed, appellant "had ample opportunity to provide any information it felt this court needed in making its decision," and it "took full advantage of this opportunity by filing three memorandums," including one submitted after the summary judgment hearing.

We agree with that assessment. On August 2, 1999, appellant filed its complaint in the Circuit Court for Anne Arundel County. Two and a half months later, on October 15, 1999, appellees filed a Notice of Removal in the Federal District Court for the District of Maryland. A week later, appellees

filed their Motion To Dismiss, Or In The Alternative, Motion For Summary Judgment in that court. After the parties filed a "Stipulation of Remand," the district court signed an order on November 1, 1999, sending the case back to the circuit court. On November 22, 1999, appellees filed the same motion in the circuit court. Over three months later, on February 22, 2000, the summary judgment hearing was held. Almost eight months had passed since appellant had first filed its complaint in the circuit court.

After that hearing, the court allowed both parties to submit supplemental memoranda and, on March 15, 2000, issued its decision. In sum, appellant had almost eight months from the date the complaint was filed until the date of the summary judgment hearing to produce evidence demonstrating a dispute as to any issue of fact, and then one month more from the date of the hearing until the circuit court issued its decision to supplement the record. Thus, appellant had "a reasonable opportunity to present, in a form suitable for consideration on summary judgment, additional pertinent material." *Antigua,* 307 Md. at 719, 517 A.2d 75. Indeed, the Court of Appeals held in *Basiliko v. Royal Nat'l Bank of New York,* 263 Md. 545, 548, 284 A.2d 227 (1971), that "three and one-third months" between the filing of pleas and the summary judgment hearing "provided ample time for interrogatories and depositions." Moreover, if appellant needed additional time to conduct discovery, it could have submitted an affidavit, pursuant to Maryland Rule 2–501(d),[4] requesting a continuance to permit further discovery. It did not do so. We therefore conclude that the circuit court did in fact treat appellees' motion as one for summary judgment, that appellant was not prejudiced by its doing so, and that appellant

---

4. According to Maryland Rule 2–501(d):

> If the court is satisfied from the affidavit of a party opposing a motion for summary judgment that the facts essential to justify the opposition cannot be set forth for reasons stated in the affidavit, the court may deny the motion or may order a continuance to permit affidavits to be obtained or discovery to be conducted or may enter any other order that justice requires.

failed to show a dispute over any genuine issues of material fact.

## II

We turn now to appellant's contention that the trial court erred in finding that appellees had not committed waste. According to appellant, appellees' failure to provide the parking in question constituted "permissive or passive waste." We disagree.

The law of waste is a common law doctrine dating back to the twelfth century. 8 RICHARD R. POWELL, POWELL ON REAL PROPERTY, § 56.02, at 56–5 (Patrick J. Rohan, ed. Matthew Bender 1998) ("POWELL"). The first important waste statute was enacted in 1267. *Id.* "In medieval England, land was almost always occupied by some type of tenant, so the law of waste performed the important function of defining the extent of occupants' rights of use and the consequences of misuse or neglect." 8 THOMPSON ON REAL PROPERTY, § 70.01, at 239 (David A. Thomas, ed.1994).

In the early nineteenth century, waste litigation was common in the United States because of the agrarian nature of nineteenth century American society. The leading cases of that era "reaffirm[ed] the basic principles of the old common law doctrine, especially that a present possessor is required to preserve the property essentially unchanged in value and character, in anticipation of the time when the future interest ripens into possession." *Id.* Among other things, "misuse and neglect" were prohibited and "limited duties of repair and maintenance" were imposed. *Id.* Although common then, waste cases are now relatively rare for a number of reasons. The most prominent among them is that "most states have now adopted some form of implied warranty of habitability, requiring landlords to maintain residential rental premises in minimally safe and habitable condition. These requirements effectively shift from tenants to landlords many of the duties of maintenance and repair that, under the law of waste, rested

with tenants as present possessors of the property." *Id.* at 239–40.

Nonetheless, the law of waste continues to evolve and Maryland, among other states, now recognizes the responsibility of a mortgagor to protect the value of a mortgagee's security from impairment. Indeed, under Maryland law, "[a]ny mortgagor, including a grantor under a deed of trust given as security for the payment of a debt or the performance of an obligation ... who, without express or implied authorization, commits or permits waste is liable for the actual damages suffered by the property." Md.Code Ann. (1974, 1996 Repl.Vol., 2001 Cum.Supp.), § 14–102 of the Real Property Article.

Our appellate courts, however, have addressed the question of waste, for the most part, in contexts other than the mortgagor-mortgagee relationship. *See Crowe v. Wilson,* 65 Md. 479, 5 A. 427 (1886) (reversioner's bill in equity to prevent tenant from committing waste by removing a building from leased property); *Redwood Hotel, Inc. v. Korbien,* 195 Md. 402, 73 A.2d 468 (1950) (landlord's action to enjoin tenant from continued commission of waste); *Beesley v. Hanish,* 70 Md.App. 482, 521 A.2d 1235 (1987) (lot owners sue other lot owners in same development, claiming waste, to prevent them from constructing a pond on the development's pond parcel); *Coutant v. Coutant,* 86 Md.App. 581, 587 A.2d 1125 (1991) (husband claimed he was entitled to reimbursement from his former spouse for the deterioration of the "family home," which she had been ordered by the court to maintain). Indeed, there are no Maryland cases in which a mortgagor has been held liable to a mortgagee for waste.

In the decision below, the circuit court relied upon the general definition of waste set forth in *Jaffe–Spindler Co. v. Genesco, Inc.,* 747 F.2d 253 (4th Cir.1984), and the more detailed and comprehensive definition of waste set forth in the Restatement (Third) of Property: Mortgages § 4.6 (Tentative Draft No. 3, 1994). That draft was later adopted by the

American Law Institute in 1996, with a few minor changes; none of which are relevant to the issues raised by this appeal.[5]

In *Jaffe–Spindler*, as noted earlier, waste was defined as " 'the destruction, misuse, alteration or neglect of premises by one lawfully in possession thereof, to the prejudice of the estate or interest therein of another.' " *Id.* at 257 (quoting 78 AM.JUR.2D WASTE § 13 (1975)). According to the Restatement (Third) of Property: Mortgages § 4.6 (Tentative Draft No. 3, 1994):

(a) Waste occurs when, without the mortgagee's consent, the mortgagor:

(1) Physically damages the real estate, whether negligently or intentionally; or

(2) Fails to maintain and repair the real estate in a reasonable manner, except for repair of casualty damage or acts of third parties not the fault of the mortgagor; or

(3) Fails to pay before delinquency property taxes or governmental assessments secured by a lien having priority over the mortgage; or

(4) Materially fails to comply with covenants in the mortgage respecting the physical care, maintenance, construction, demolition, or insurance against casualty of the real estate or improvements on it; or

---

**5.** The Restatement (Third) of Property: Mortgages § 4.6 as adopted and promulgated by the American Law Institute in 1996 provides:

(a) Waste occurs when, without the mortgagee's consent, the mortgagor:

(1) physically damages the real estate, whether negligently or intentionally, in a manner that reduces its value;

(2) fails to maintain and repair the real estate in a reasonable manner, except for repair of casualty damage or acts of third parties not the fault of the mortgagor;

(3) fails to pay before delinquency property taxes or governmental assessments secured by a lien having priority over the mortgage;

(4) materially fails to comply with covenants in the mortgage respecting the physical care, maintenance, construction, demolition, or insurance against casualty of the real estate or improvements on it; or

(5) retains possession of rents to which the mortgagee has the right of possession under § 4.2.

(5) Retains possession of rents to which the mortgagee has the right of possession under § 4.2.

§ 4.6(a) at 49–50.

The circuit court thereupon found that, under *Jaffe–Spindler*, there had been "no destruction, misuse, alteration or neglect" by appellees and that appellant had failed to establish or even allege any of the elements of waste that were set forth in the Restatement (Third) of Property: Mortgages § 4.6 (Tentative Draft No. 3, 1994). It observed that there was "no allegation that the property [was] in disrepair, that taxes [had] not been paid, or that any ... monies [had] been wrongfully withheld." The court concluded that there was no "evidence that [appellees had] breached their duty of reasonable care of the property."

Appellant claims, however, that the circuit court erred in failing to consider the difference "between affirmative and passive waste." To be more precise, appellant maintains that the circuit court failed to realize that appellees' "failure to secure parking for the Property ... [was] yet another example of permissive or passive waste." Unfortunately, appellant's contention is wide of the mark.

A mortgagor's liability for waste "is in the nature of a tort" and is based upon "a breach of a duty arising from the mortgage relationship." · Restatement (Third) of Property: Mortgages § 4.6 cmt. a, at 264 (1996). *See also* 93 C.J.S. WASTE § 2 (1956) (stating that "the essence of liability for permissive waste is negligence."). There are principally two different types of waste: voluntary and permissive waste. Permissive waste, which is the type of waste at issue here, "involves acts of omission rather than commission," *Coutant*, 86 Md.App. at 596, 587 A.2d 1125, and "results generally from the failure of the possessor to exercise the care of a reasonable person to preserve and protect the estate for future interests." POWELL § 56.05[2] at 56–19. Voluntary waste "is active or positive, and consists in doing some act of destruction or devastation, such as the pulling down of a house, or the removal of parts fixed to, and constituting a material part of,

the freehold." 93 C.J.S. WASTE § 1 (1956). Traditionally, waste involves physical damage to real property. Restatement (Third) of Property: Mortgages § 4.6 cmt. a, at 263 (1996). *See Ganbaum v. Rockwood Realty Corp.,* 62 Misc.2d 391, 308 N.Y.S.2d 436, 441 (Sup.Ct.1970) ("[w]aste consists of physical damage to the mortgaged property and not the failure to comply with the financial conditions of a mortgage."); *Jennings v. Elliott,* 186 Okla. 285, 97 P.2d 67, 71 (1939)("taking oil from land by one not entitled so to do reduces the corpus of the estate to that extent and amounts to waste"); *Pleasure Time, Inc. v. Kuss,* 78 Wis.2d 373, 254 N.W.2d 463, 467 (1977)(waste is "unreasonable conduct by the owner of a possessory estate that results in physical damage to the real estate").

The law of waste, however, has also been applied to a narrow range of cases, which do not involve physical damage to real property but do involve the impairment of a mortgagee's interest in that property. *See Nusbaum v. Shapero,* 249 Mich. 252, 228 N.W. 785, 789 (1929) (the failure to pay real estate taxes and insurance premiums "tends to destroy the security" and is therefore waste); *Grieve v. Huber,* 38 Wyo. 223, 266 P. 128, 134 (1928) ("delinquent taxes and unpaid interest" constitute waste); *Newman v. Van Nortwick,* 95 Wash. 489, 164 P. 61, 62 (1917) (the "payment of taxes is necessary to the preservation of the property" and "not to pay them is waste"). The feature common to all of these cases is a judicial finding that a duty to preserve the subject property had been breached and that the breach had resulted in the impairment of an interest in that property. Failing to find a Maryland case on point or even supportive of his position, appellant cites a number of cases from other jurisdictions, in which permissive waste was found. These cases, he claims, are analogous to the instant case.

None of these cases, however, lend support to its contention that appellees committed permissive waste by failing to "secure parking for the Property." Most of them involve physical damage to property and are therefore not relevant. *See Pasulka v. Koob,* 170 Ill.App.3d 191, 121 Ill.Dec. 179, 524

N.E.2d 1227, 1232 (1988) (involving claim of waste stemming from strip mining operation); *Turner v. Kerin & Assoc.,* 283 Mont. 117, 938 P.2d 1368, 1375 (1997) (reversing lower court's dismissal of mortgagor's claim that water pipe installed by contractor failed to comply with required standards and thus "impaired" mortgagor's security interest in real property); *Keesecker v. Bird,* 200 W.Va. 667, 490 S.E.2d 754, 759 (1997) (involving claims of waste based on neglect resulting in physical degradation to remainderman's interest in real and personal property).

The remaining cases cited by appellant principally involve the failure to pay property taxes. *See Travelers Ins. Co. v. 633 Third Assoc.,* 14 F.3d 114, 123 (2nd Cir.1994) (under New York law, "the intentional failure to pay property taxes where there is an obligation to do so or where the failure is fraudulent constitutes waste"); *North American Sec. Life Ins. Co. v. Harris Trust and Sav. Bank,* 859 F.Supp. 1163, 1165 (N.D.Ill. 1994) (non-payment of real estate taxes constitutes waste under Illinois law); *Capitol Bankers Life Ins. Co. v. Amalgamated Trust & Savings Bank,* No. 92C 4480, 1993 WL 594103, at *5, 1993 U.S. Dist. LEXIS 6032, at *13 (N.D.Ill. May 6, 1993), *aff'd,* 16 F.3d 1225 (7th Cir.1994) ("failure to pay taxes constitutes waste" under Illinois law); *Hausmann v. Hausmann,* 231 Ill.App.3d 361, 172 Ill.Dec. 937, 596 N.E.2d 216, 220 (1992) (the "failure to pay real estate taxes on a life estate by the life tenant may give rise to a cause of action in waste"); *Union Mortgage Co. v. Nelson,* 82 N.Y.S.2d 268, 270 (N.Y.Sup.Ct.1948) ("the failure of a life tenant to pay taxes has been held waste in so far as the remainderman is concerned"); *Straus v. Wilsonian Inv. Co.,* 171 Wash. 359, 17 P.2d 883, (1933) (the failure to pay taxes imposes a burden on mortgaged property and therefore constitutes waste).

Other state courts have also held that the failure to pay real estate taxes can constitute waste, *Abernathy v. Orton,* 42 Or. 437, 71 P. 327, 329 (1903) (defendant's refusal to pay property taxes, even though he has the ability to do so, constituted waste); *Nippon Credit Bank, Ltd. v. 1333 North Cal. Boulevard,* 86 Cal.App.4th 486, 496, 103 Cal.Rptr.2d 421 (2001)

("[w]aste encompasses default on senior tax liens"), as well as the failure to pay interest on a senior mortgage, *Larson v. Orfield*, 155 Minn. 282, 193 N.W. 453, 454 (1923)(the failure to pay interest on a first mortgage, real estate taxes, and insurance premiums constituted waste and impaired the mortgagee's security), and to pay property insurance premiums, *First Nat'l Bank v. Dual*, 15 Alaska 542, 545 (1955) (the failure to pay insurance premiums can constitute waste.)

The non-payment of property taxes and interest is distinguishable from the failure to secure off-site parking. The non-payment of "interest or taxes constitutes waste because it results either in an increase of the debt or in an impairment of the security by subjecting it to liens superior to that of the mortgagee." *Dick & Reuteman Co. v. Jem Realty Co.*, 225 Wis. 428, 274 N.W. 416, 421 (1937). None of that occurs for failing to obtain off-site parking. Furthermore, the payment of real estate taxes is a long-recognized duty. *See Hausmann*, 172 Ill.Dec. 937, 596 N.E.2d at 220 (1992) ("It has long been accepted ... that a life tenant has a duty to pay real estate taxes assessed against the land during his life tenancy"). It hardly needs to be said that there is no long-recognized duty to obtain off-site parking.

The non-payment of insurance premiums is also plainly distinguishable from the failure to secure off-site parking. Insurance protects mortgagees against the impairment of the value of the mortgaged property resulting from the physical degradation or destruction of that property. In short, it is directly linked to the physical preservation of the insured property. In contrast, there is no direct connection between the failure to secure off-site parking and the physical preservation of real property. In fact, to arrive at the conclusion that the failure of appellees to negotiate for off-site parking impaired the value of the Property requires a string of shaky inferences: that off-site parking was needed; that had appellees negotiated for it, they would have secured it; that their failure to do so resulted in a loss of tenants; and that the loss

of those tenants substantially affected the value of the Property.

We also note that parties were free to contractually expand or narrow the definition of waste. Restatement (Third) of Property: Mortgages § 4.6 cmt. c (1996); *North American Sec. Life Ins. Co.*, 859 F.Supp. at 1165–66. Although appellant was not an original party to the mortgage, it had the opportunity to alter the definition of waste when the parties entered into the Modified Note Agreement. Its failure to do so was an error for which this Court can provide no redress.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**